304 S.E.2d 16

**Larry D. VILLERS, Sherry M. Villers, Jerry L. Villers and Karen L. Villers**

v.

**Joe L. WILSON and James B. Hayhurst, Jr., etc. et al.**

**No. 15652.**

Supreme Court of Appeals of West Virginia.

March 25, 1983.

Rehearing Denied July 5, 1983.

**112**

Herbert G. Underwood and Irene M. Keeley, Steptoe & Johnson, Clarksburg, for appellants.

Daniel A. Ruley, Jr. and Robert L. Bays, Parkersburg, for appellees.

McHUGH, Justice:

This action is before this Court upon an appeal by Larry D. Villers, Sherry M. Villers, Jerry L. Villers and Karen L. Villers, appellants, from an order of the Circuit Court of Wood County, West Virginia. The order dissolved a temporary injunction which this Court had granted staying a foreclosure sale of appellants' homes. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

On April 23, 1973, appellants and two others, of Villers Motor Sales, granted a deed of trust to the First Federal Savings and Loan Association of Parkersburg (First Federal Savings and Loan) on the real estate known as "Villers Motor Sales" in exchange for $248,000.

On September 4, 1980, the appellants obtained a Small Business Administration (S.B.A.) loan from the Parkersburg National Bank (Bank) in the amount of $720,000. In order to secure the loan the appellants granted the Bank second deeds of trust upon the personal residences of the appellants as well as the real estate known as "Villers Motor Sales" (an automobile dealership).

The appellants also had another financial arrangement with the Bank. The arrangement was known as an "Agreement For Wholesale Financing" (Agreement). It was entered into on August 25, 1966. The Agreement enabled the appellants to obtain the funds necessary to purchase automobiles from the manufacturer for later resale to the public. By its terms, when an automobile was sold, the appellants would in turn repay the Bank the funds which it had advanced. Until the Bank was repaid, the Agreement gave the Bank a security interest and security title in both appellants' inventory and proceeds from the sales of inventory items.

Soon after securing the S.B.A. loan from the Bank, Villers Motor Sales was beset with financial problems. It is alleged that as of September 30, 1981, Villers Motor

Sales owed the Bank $119,288.65 under the Agreement.[1]

Also on September 30, 1981, the appellants allege that the appellees, the Bank, and its trustees, Wilson and Hayhurst, entered the premises of Villers Motor Sales under the guise of the Agreement and seized not only the inventory of the dealership, but the remaining assets as well, thus violating the terms of the Agreement.[2] The Bank, however, contends that it only seized inventory items of the dealership and therefore did not violate the Agreement.

On November 10, 1981, First Federal Savings & Loan which held the first deed of trust on the real estate known as "Villers Motor Sales" foreclosed on that property. The property sold for $260,000, $36,159.45 in excess of what the dealership owed First Federal Savings and Loan.

As of September 4, 1981, Villers Motor Sales was also allegedly delinquent in the repayment of the S.B.A. loan to the extent of $77,393.94.[3] This allegation is not denied by the appellants. On December 8, 1981, the appellees filed a complaint (Civil Action No. 81–C–1442) seeking to have the $36,159.45 surplus applied to the debt secured by the second deed of trust (the S.B.A. loan) held by the Bank.

In answering this complaint the appellants also filed a counterclaim alleging that the Bank seized all the assets of Villers Motor Sales. By seizing more than the inventory items the Bank thus breached the Agreement according to the appellants. In so doing, appellants allege, the Bank terminated Villers Motor Sales as an ongoing business concern, which in turn caused the dealership to become delinquent in the repayment of its debts. The appellants sought a total of $4.5 million in unliquidated damages from the Bank.

Soon thereafter, the Bank attempted to foreclose on the appellant's personal residences, which were used as security for the $720,000 S.B.A. loan. Whereupon, the appellants sought an injunction in the Circuit Court of Wood County to prevent the sale pending the outcome of the litigation on the counterclaim. The circuit court denied the injunction on May 26, 1982. Pursuant to *W.Va.Code*, 53–5–5 [1931], this Court granted a temporary injunction on June 2, 1982. However, on July 1, 1982, the circuit court dissolved the injunction, thus permitting the sale of the personal residences to be held.

As is reflected by the briefs of the parties, authority concerning the issue presently before us is sparse. Both the appellants and appellees rely upon *Shrader v. Gardner*, 70 W.Va. 780, 74 S.E. 990 (1912) to support their respective positions.

In *Shrader*, William P. Gardner owned a parcel of land which he sold to James E. McDonald. McDonald executed a deed of trust conveying the land to a trustee to secure the payment of $7,500, a part of the purchase price to Gardner. McDonald subsequently sold the land to Shrader subject to the deed of trust. Later there was a default on the note secured by the deed of trust, and the trustee instituted foreclosure proceedings. Shrader sought to enjoin the foreclosure sale because, among other reasons, he alleged that Gardner had wrongfully continued to receive certain rents from the land after he had sold it. Shrader's claim was that he, in effect, had an unliquidated claim against Gardner for the rents and that because of the claim the foreclosure to satisfy the $7,500 loan should be enjoined.

The court rejected Shrader's assertion and held that the fact that Shrader had an

---

1. This figure is taken from a Bank memorandum dated January 14, 1982. The $119,288.65 figure includes $86,673.40 for 11 automobiles sold by the dealership but which had not been remitted to the Bank and $32,615.25 in interest.

2. The remaining assets included "accounts receivable, cash on hand, buildings, bank accounts (checking and savings), utilities, services and work in progress."

3. This figure is also taken from the Bank memorandum dated January 14, 1982. *See* n. 1. The $77,393.94 figure includes $62,674.75 interest and $14,719.19 principal. In its answer to the appellee's counterclaim the Bank, however, uses only the $62,674.75 figure as being delinquent.

unliquidated claim against Gardner was not sufficient to support the issuance of an injunction banning the sale. The court said that if Shrader had any course available to him it was not by injunction but "it would be an action of damages for the breach of warranty, a collateral matter, a claim for unliquidated damages, which could not be set off against a deed of trust by way of injunction." 70 W.Va. at 783, 74 S.E. at 991.

The appellants contend that the Court in *Shrader, supra,* denied the injunction because the claim asserted by Shrader did not arise directly "out of the land which could affect title thereto." Whereas, in the present case the appellants contend that because their claim against the Bank arises directly out of the property which could affect title thereto, an injunction should be issued.

To further support their position appellants cite *Mankin v. Dickinson,* 76 W.Va. 128, 85 S.E. 74 (1915). In that case the Court held that the sale of property held under a trust deed could not be enjoined to await the outcome of pending litigation of unrelated controversies between some of the parties. Thus, the appellants contend that an injunction should be issued in the present action because the counterclaim filed by the appellants in Civil Action No. 81–C–1442 directly arose from actions by the Bank concerning the property (Villers Motor Sales) which could affect the title thereto, and as such constitutes a related controversy.

Appellees, however, contend that the holding in *Shrader, supra,* prohibits the grantor of a trust deed, who is in default, from enjoining the sale of the property granted by the trust deed by virtue of the grantor having unliquidated demands against the creditor whose debt is secured by that trust deed. Additionally, appellees contend that appellant's counterclaim in Civil Action No. 81–C–1442 is an unrelated controversy, and, as such, *Mankin, supra,* supports their position.

We think the appellees' interpretation is the more sound of the two.

In reaching its conclusion in *Shrader v. Gardner, supra,* the Court relied on two Virginia cases. The first cited case was *Robertson v. Hogsheads,* 30 Va. 667 (1832). In that case the plaintiff purchased a parcel of real estate from the defendant. The plaintiff paid almost half the purchase price in cash and gave a deed of trust for the remainder. Several years later the plaintiff filed an action seeking an abatement of the purchase price because the defendant had made certain misrepresentations concerning the land. Apparently the plaintiff had become delinquent in the payments due under the deed of trust. At the same time he filed the abatement action he also sought an injunction preventing the trustee from selling the land.

In denying the injunction, the Court held that a claim for unliquidated damages could not be used to set off the remainder still due from the original purchase price. The Court reasoned that the plaintiff should have instituted proper proceedings and ascertained his damages before attempting to prevent the sale of the land. The writer of the opinion further noted that the possibility that the plaintiff would prevail in an action seeking unliquidated damages was not sufficient cause for the Court to issue the injunction.

The second case cited as authority in *Shrader v. Gardner, supra,* was *Cleaver v. Matthews,* 83 Va. 801, 3 S.E. 439 (1887). In that case the plaintiff sought to offset from the purchase price of a parcel of real estate damages that he had sustained when the defendant wrongfully cut timber off of the plaintiff's land. The defendant had a deed of trust on the land. The plaintiff also attempted to enjoin the trustee from selling the real estate until these damages could be ascertained.

In denying the injunction the Virginia Supreme Court held that the plaintiffs could not "set off against the unpaid balance of purchase money the unliquidated damages they have sustained by reason of the trespass.... Their remedy, if they have been injured as they claim, is at law. A suit in equity cannot be changed into an action of trespass...." 3 S.E. at 441.

■ The determinative factor in deciding whether an injunction will be issued in the present case is dependent upon whether the appellants' counterclaim in Civil Action No. 81–C–1442 is related to the trust deed agreement the appellants had with the Bank. We are cognizant of the fact that the appellants had two financial arrangements with the Bank, i.e., the Agreement For Wholesale Financing and the S.B.A. loan. While we further acknowledge that both financial arrangements concerned the appellants' business venture, Villers Motor Sales, we also recognize they were separate and distinct agreements. The two financial arrangements were entered into on different dates more than 14 years apart, were not dependent upon each other in any manner and did not specifically refer to each other.

In their counterclaim in Civil Action No. 81–C–1442 the appellants allege that the Bank, by its actions on September 4, 1981, violated the Agreement For Wholesale Financing. Even if the Bank did violate the Agreement For Wholesale Financing that agreement was independent from the trust deed agreement. Because the Bank's actions did not arise from the trust deed, the appellants' claim for unliquidated damages is an unrelated one.

■ Another factor to be considered in resolving the issue before us lies in the trust deed method of sale. In West Virginia the trust deed method has long been both legislatively and judicially sanctioned. *W.Va.Code*, 38–1–3 [1931]; *See, e.g., Corrothers v. Harris*, 23 W.Va. 177 (1883). A trust deed sale is normally conducted by a private individual, not a court. The trustee has limited powers, which do not include the power to resolve controversies over debts owed by the secured creditor to the debtor. *See George v. Zinn*, 57 W.Va. 15, 49 S.E. 904 (1905); *See generally* 13A M.J., *Mortgages And Deeds of Trust* § 50 (1978). There is no requirement that a trustee invoke judicial action to consummate a trust deed sale.[4]

However, in denying the injunction under the facts presented in the present case we also recognize there are instances when an injunction may lie; for example, when the proper amount due on the debt is in dispute. *See Wood v. West Virginia Mortgage & Discount Corporation*, 99 W.Va. 117, 127 S.E. 917 (1925).

No authority has been brought to our attention which holds that a debtor's claim for unliquidated damages against the secured creditor constitutes an equitable circumstance sufficient to justify the interference of a court in the type of private trust deed sale current in West Virginia and involved in the case before us. To the contrary, we find both West Virginia and Virginia authority which recognize that the sale of property by a trustee under a trust deed will not be enjoined where the sole ground relied upon for the issuance of the injunction is that the grantor of the trust deed has an unliquidated claim against the creditor whose debt is secured by that trust deed for damages arising out of a transaction unrelated to the trust deed agreement. *Mankin v. Dickinson, supra; Shrader v. Gardner, supra; Cleaver v. Matthews, supra; Robertson v. Hogsheads, supra.*

The appellees also argue that 15 U.S.C. § 634(b)(1) prohibits state courts from issuing an injunction in circumstances similar to those now before the Court. We need not address this argument in light of our decision.

---

4. It should also be noted that many other states use the mortgage as the security device in the sale of real estate, instead of the trust deed. The most fundamental difference between a mortgage and a trust deed lies in the method of foreclosure. Foreclosure under a mortgage occurs only after entry of a judicial decree. Foreclosure under a trust deed normally occurs when a trustee, designated by the debtor in the trust deed, executes the trust and sells the property. In the trust deed situation, there is normally no requirement that the trustee institute a proceeding in any court; and there is also no requirement that he obtain judicial authorization to act. *See* Glenn, *Mortgages* § 20 (1943). Because of the different methods of foreclosure some courts have authorized a counterclaim to be filed by the mortgagor against the mortgagee in the foreclosure action. *See, e.g., Stewart Livestock Co. v. Ostler*, 105 Utah 529, 144 P.2d 276 (1943).

Accordingly, for the reasons stated above, the July 1, 1982, order of the Circuit Court of Wood County dissolving the injunction is affirmed.

Affirmed.