484 S.E.2d 232

**FAYETTE COUNTY NATIONAL BANK,**
Plaintiff Below, Appellee,

v.

**Gary C. LILLY, et al., Defendants**
Below, Appellants.

No. 23360.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 21, 1997.

Decided March 14, 1997.

Kevin B. Burgess, Hamilton, Burgess, Young, Tissue & Pollard, Oak Hill, for Appellants.

Frederick A. Jesser, III, Fayetteville, for Appellee.

Deborah A. Sink and Charles B. Dollison, Bowles, Rice, McDavid, Graff & Love, Charleston, for West Virginia Bankers Association, Amicus Curiae.

DAVIS, Justice:

This appeal was taken by Gary C. Lilly and Neva P. Lilly, appellants/defendants below (hereinafter referred to as the Lillys) from an order by the Fayette County Circuit Court granting summary judgment to Fayette County National Bank, appellee/plaintiff below (hereinafter referred to as the Bank).[1] The Bank filed this action to recover the balance of a debt owed to it by the Lillys, after a deficiency arose from a trustee sale of real property owned by the Lillys. The circuit court's summary judgment order awarded the Bank $10,208.16. On appeal the Lillys contend that the circuit court committed error in not permitting them to argue, as an affirmative defense, that the sale price obtained for their real property was below the fair market value. The Lillys sought to offset the "fair market" value of their property against the deficiency. We disagree with the Lillys' position and affirm the circuit court's order.

## I.

## FACTS

The facts of this case are straightforward. On February 18, 1992, the Lillys obtained a loan from the Bank in the amount of $35,000. The loan was secured by a Deed of Trust pledging 63 lots owned by the Lillys. Prior to granting the loan the Bank required the Lillys to have the lots appraised. The Lillys chose Mike Walbrown.[2] On January 24, 1992, Mr. Walbrown appraised the lots at a total market value of $94,000. The Lillys eventually defaulted on the loan.[3] During the period of default on the loan the Bank secured a second appraisal of the lots by Ronnie D. Sedlock, the son-in-law of the Bank's president.[4] On February 2, 1994, Mr. Sedlock appraised the lots at a total market value of $26,500. After the second appraisal the Bank required the trustee of the lots to execute the Deed of Trust. On March 7, 1994, the Bank purchased the lots at a public auction for the total sum of $26,500. At the time of the foreclosure sale the Lillys owed the sum of $33,850.93 on the original loan. It is undisputed that all statutory requirements of the State's foreclosure laws were followed. It is also undisputed that the Lillys did not seek to have the foreclosure sale set aside; but, instead sought an offset against the deficiency in the amount of what they perceived to be the fair market value of the lots.

On March 11, 1994, the Bank filed the instant action seeking to recover $10,280.16 from the Lillys. The amount sought by the Bank represented the difference between the amount owed on the original loan and the price obtained at the foreclosure sale, plus certain other costs and expenses associated with the sale. The Lillys filed an answer to the complaint. The Lillys alleged, as a defense, that the stated value of the lots was much higher than the sum of $26,500.[5] The Bank moved for summary judgment. By order entered June 12, 1995, the circuit court granted summary judgment for the Bank.

---

1. An amicus curiae brief was filed by the West Virginia Bankers Association, in support of the Bank's position on the issues in this case.

2. During the deposition testimony of Christopher H. Banks, Senior Vice–President of the Bank, he indicated that "95 percent of our appraisals for the last two or three years" were done by Mr. Walbrown or Cardinal Realty.

3. The default occurred at some point in November of 1993. It appears that the default was precipitated by the Lillys' decision to divorce.

4. Mr. Sedlock was employed by Cardinal Realty.

5. The Lillys eventually moved the circuit court to amend their answer to include a counterclaim against the Bank. The counterclaim alleged misconduct by the Bank in procuring the lots at the price obtained. The circuit court did not rule upon the Lillys' motion to amend their answer.

The Lillys filed this appeal. Two issues are presented by the appeal: (1) the adequacy of the circuit court's order, and (2) whether the value of foreclosure sale real property may be litigated in a deficiency judgment proceeding.

## II.

### STANDARD OF REVIEW

■ The focal point in this case is the appropriateness of summary judgment. "A circuit court's entry of summary judgment is reviewed de novo." Syl. pt. 1, *Davis v. Foley*, 193 W.Va. 595, 457 S.E.2d 532 (1995); Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Our traditional standard for granting summary judgment is set out in syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), wherein we held: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *In accord* Syl. pt. 1, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995); Syl. pt. 2, *Painter;* Syl. pt. 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Our cases have indicated that Rule 56 of the W.Va.R.Civ.P. is "'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,' if there essentially 'is no real dispute as to salient facts' or if it only involves a question of law." *Williams*, 194 W.Va. at 58, 459 S.E.2d at 335, *quoting, Painter;* 192 W.Va. at 192 n. 5, 451 S.E.2d at 758 n. 5 (*quoting, Oakes v. Monongahela Power Co.*, 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974)). Rule 56(c) states, in pertinent part, that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ We noted in *Williams*, 194 W.Va. at 59, 459 S.E.2d at 336, the function of the circuit court at the summary judgment stage "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Quoting, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). In syllabus point 5 of *Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451 (1995) we explained what, under Rule 56(c), is a "genuine issue" by stating:

> Roughly stated, a "genuine issue" for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed "material" facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

*In accord* Syl. pt. 2, *Morton v. Amos–Lee Securities, Inc.*, 195 W.Va. 691, 466 S.E.2d 542 (1995). Finally, in *Williams*, 194 W.Va. at 59, 459 S.E.2d at 336 we noted that "'credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Quoting, Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. With these principles in mind, we turn to the issues in this case.

## III.

### DISCUSSION

The parties agree that summary judgment would be inappropriate in this case, had the Lillys been allowed to defend this action on the basis that the sale price of their lots was below the fair market value. However, it is necessary to first clarify the problem presented by the contents of the circuit court's summary judgment order before addressing the Lillys' defense.

### A.

### *Adequacy Of The Circuit Court's Order*

In *Chapple v. Fairmont General Hosp., Inc.*, 181 W.Va. 755, 762, 384 S.E.2d 366, 373

(1989) we indicated that "it would be totally improper for the trial court to make findings of fact in connection with granting a summary judgment, as the very nature of summary judgment is that there is no genuine issue of material fact, entitling the moving party to judgment as a matter of law." It was also noted by this Court in *Bauer Enterprises, Inc. v. Frye*, 181 W.Va. 234, 237, 382 S.E.2d 71, 74 (1989) that "[t]he requirement for findings of fact and conclusions of law '[i]n all actions tried upon the facts without a jury . . .' under Rule 52(a) of the West Virginia Rules of Civil Procedure, does not apply to motions made under Rule 56." *Citing*, D. Olson, *Modern Civil Practice in West Virginia*, Trials § 7.33 at 391 (1984).[6]

Notwithstanding the general requirement established by our prior cases and the pronouncement in Rule 52(a) on findings of fact and conclusions of law, Justice Cleckley appropriately qualified this area in *Gentry v. Mangum*, 195 W.Va. 512, 521, 466 S.E.2d 171, 180 (1995), where we said that "on summary judgment, a circuit court must make factual findings sufficient to permit meaningful appellate review." *Gentry* instructs us that an order granting summary judgment cannot merely recite and rest exclusively upon a conclusion that, "No genuine issue of material fact is in dispute and therefore summary judgment is granted." For meaningful appellate review, more must be included in an order granting summary judgment. This Court's function, as a reviewing court is to determine whether the stated reasons for the granting of summary judgment by the lower court are supported by the record.[7] It was said in *Mapleturn Utilities, Inc. v. Foxcliff South Associates, Inc.*, 673 N.E.2d 5, 10 (Ind.Ct.App.1996), that "[w]here the trial court enters findings of fact and conclusions of law when ruling upon a motion for summary judgment, such findings and conclusions illuminate the trial court's rationale[.]" *See Lowry v. Mills*, 682 So.2d 802 (La.App. 3 Cir.1996); *Porlick, Poliquin, Samara, Inc. v. Compton*, 683 So.2d 545 (Fla.App. 3 Dist.1996); *Ford v. City of Riverton*, 919 P.2d 636 (Wyo.1996); *Kim v. Kansas Department of Revenue*, 22 Kan. App.2d 319, 916 P.2d 47 (1996); *Allyn v. McDonald*, 112 Nev. 68, 910 P.2d 263 (1996).[8]

---

6. Rule 52(a) provides in relevant part: "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in Rule 41(b)."

7. We hasten to point out that as a practical matter, circuit courts generally do provide meaningful findings in final orders granting summary judgment. Therefore, our holding today will merely reinforce and require what most circuit courts have been doing as a matter of de facto protocol.

8. We are fully cognizant that a majority of jurisdictions do not require trial courts to set out findings in orders granting summary judgment. It was said by the court in *Owens v. Rado*, 659 So.2d 87, 92 (Ala.1995) that "a court should not enter a summary judgment if, to enter a judgment, the court must make findings of fact." The position taken in *Owens* is consistent with the majority approach to this issue. We believe this approach is grounded in blind adherence to fictional legal form, that sacrifices concrete legal substance. Requiring that meaningful findings be set out in orders granting summary judgment does not somehow transform circuit court's into triers of fact—engaging in weighing and credibility determinations that are prerequisites for disputed jury facts. In reviewing a circuit court's order granting summary judgment this Court, like all reviewing courts, engages in the same type of analysis as the circuit court. That is "'we apply the same standard as a circuit court,' reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W.Va. 692, 698, 474 S.E.2d 872, 878 (1996), quoting *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 58, 459 S.E.2d 329, 335–36 (1995), citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538, 553 (1986). When we are through with our analysis, we render written findings, i.e., opinions which set out reasons that explain our decisions. Were we to continue to follow the logic of the majority on this issue, we must ultimately concede that this Court cannot render opinions rationalizing our decisions when reviewing summary judgment orders. In the final analysis, it is illogical to prohibit circuit courts from making meaningful findings in granting summary judgment. This Court does exactly that when we review orders granting summary judgment. Of course, we are not requiring circuit courts to render the elaborate findings that are the standard for this Court's opinions; but, we are requiring meaningful findings that will guide our review of decisions granting summary judgment. The circuit court's order must provide clear notice to all parties and the reviewing court as to the rationale applied in granting or denying summary judgment. "To be clear, being explicit about its

The point stressed by *Mapleturn Utilities, Inc.* was echoed by this Court in a different setting, in the case of *Province v. Province,* 196 W.Va. 473, 483, 473 S.E.2d 894, 904 (1996) (where we said that a family law master's "order must be sufficient to indicate the factual and legal basis for [it's] ultimate conclusion so as to facilitate a meaningful review of the issues presented. Where the lower tribunal[ ] fail[s] to meet this standard—i.e. making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development."). Therefore, we hold that although our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed. In other words, the circuit court's order must provide clear notice to all parties and the reviewing court as to the rationale applied in granting or denying summary judgment.

■ In the instant proceeding the circuit court's summary judgment order stated: "The Court having maturely considered ... said Motion, it is the opinion of the Court that the relief prayed for should be granted, as is more fully set out in that letter dated June 8, 1995, the original of which is attached hereto and made a part hereof." As to the referenced letter of June 8, it provides: "The Court has considered plaintiff's motion for summary judgment, and after considering counsel's memorandums and argument is of the opinion that the motion should be granted, there being no genuine issues that exist as to material facts in this action for deficiency judgment." The summary judgment findings by the circuit court in this case do not rise to the level of "meaningful" findings required by the holding we have made today. The circuit court's order in this case is indicative and supportive of our statement in *Ma-*

sinter v. WEBCO Co., 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980), that "we have viewed summary judgment with suspicion[.]" *Citing, Gavitt v. Swiger,* 162 W.Va. 238, 248 S.E.2d 849 (1978); *Johnson v. Junior Pocahontas Coal Co., Inc.,* 160 W.Va. 261, 234 S.E.2d 309 (1977); *Oakes v. Monongahela Power Co.,* 158 W.Va. 18, 207 S.E.2d 191 (1974); *Hines v. Hoover,* 156 W.Va. 242, 192 S.E.2d 485 (1972); *State ex rel. Payne v. Mitchell,* 152 W.Va. 448, 164 S.E.2d 201 (1968). However, because we have determined that the instant case's disposition turns on a separate legal issue, we decline to remand this case so that the circuit court may provide meaningful findings of fact and conclusions of law.

### B.

### The Fair Market Value Of Foreclosure Sale Real Property May Not Be Litigated In A Deficiency Judgment Proceeding

The Lillys assert that the circuit court did not consider their evidence concerning the true value of the lots. Further, the Lillys argue that if such evidence had been considered, summary judgment would not have been granted. The Bank and amicus contend that such evidence was not properly before the circuit court, because this was a deficiency judgment proceeding. Additionally, the Bank and amicus contend that the proper forum for litigating the value of the lots was in a suit to set aside the trustee's sale. The Bank and amicus further argue that the issue being considered is whether a grantor may assert as a defense, the fair market value of foreclosed real property in a deficiency judgment action. This is an issue of first impression for this Court.

We begin our analysis by reviewing the area of law that is at issue in this case. The legislature has provided for two types of real property foreclosure sales: judicial sales [9]

---

reasoning not only assists the hearing tribunal in analyzing legal claims and the equities of the situation, but also facilitates appellate review." *Province,* 196 W.Va. at 483, 473 S.E.2d at 904.

**9.** The statutory provisions for judicial sales are found in W.Va.Code § 55–12–1 et seq. (1994).

and trustee sales.[10] In describing a central difference between the two types of real property foreclosure sales, one commentator has noted that "[t]he high cost attendant to the judicial system and time lapse between the actual default and time of sale make the [judicial sale] less popular.... In contrast, [trustee] sale is a 'streamlined more efficient version of judicial foreclosure.'" Pamela Giss, *An Efficient and Equitable Approach to Real Estate Foreclosure Sales: A Look at the New Hampshire Rule*, 40 St. Louis U.L.J. 929, 939 (1996), *quoting* Durham, *In Defense of Strict Foreclosure, infra* note 11. This Court pointed out in *Young v. Sodaro*, 193 W.Va. 304, 307 n. 7, 456 S.E.2d 31, 36 n. 7 (1995) that "[i]n the event there is a default in payment of a debt secured by a deed of trust, the [trustee] thereof need not apply to a court to foreclose it.... Instead, the property merely becomes liable to sale under the power of sale conferred upon the trustee." (Citations omitted). *See also Villers v. Wilson*, 172 W.Va. 111, 115, 304 S.E.2d 16, 19 (1983) ("A trust deed sale is normally conducted by a private individual, not a court. The trustee has limited powers, which do not include the power to resolve controversies over debts owed by the secured creditor to the debtor. There is no requirement that a trustee invoke judicial action to consummate a trust deed sale.") (Citations omitted).

Virtually every state provides for judicial sale of real property by statute.[11] A majority of states provide for nonjudicial foreclosure sales by statute.[12] However, a minority of states provide for nonjudicial foreclosure sales by statute *only if* the matter involves a trustee deed.[13]

In the instant proceeding the type of sale that transpired was that of a trustee sale. The provision permitting a trustee to foreclose on real property is W.Va.Code § 38–1–3 (1985), which provides in relevant part:

The trustee in any trust deed given as security shall, whenever required by any creditor secured ... by the deed ... after the debt due to such creditor ... shall have become payable and default shall have been made in the payment thereof ... by the grantor ... and if all other conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened, sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction, having first given notice of such sale as prescribed in the following section.

In syllabus point 2 of *Dennison v. Jack*, 172 W.Va. 147, 304 S.E.2d 300 (1983) we made clear that "[t]he provisions of W.Va.Code, ch. 38, art. 1, which permit, pursuant to the terms of a trust deed, a public sale of property by a trustee upon the default of the grantor of the trust deed, do not violate the public policy of this State."

The issue of whether the value of foreclosed real property may be challenged in a deficiency judgment proceeding is not addressed by our trustee sale statutes. The Lillys point out in their brief that a majority of jurisdictions permit the value of foreclosed real property to be challenged in a deficiency judgment proceeding. *See National Canada Corp. v. Dikeou*, 868 P.2d 1131 (Colo.App. 1993); *Addison Mortg. Co., Inc. v. Weit*, 613 So.2d 104 (Fla.App. 3 Dist.1993); *Federal Land Bank of Jackson v. Wolfe*, 560 So.2d 137 (Miss.1989); *Olney Savings and Loan Ass'n v. Farmers Market of Odessa, Inc.*, 764 S.W.2d 869 (Tex.App.—El Paso 1989); *First Federal Savings Bank v. Knauss*, 296 S.C. 136, 370 S.E.2d 906 (1988); *Federal Land Bank of St. Paul v. Bergquist*, 425 N.W.2d 360 (N.D.1988); *Duke v. Daniels*, 660 S.W.2d 793 (Tenn.App.1983); *American Federal Sav. & Loan Ass'n of Madison v. Kass*, 320 N.W.2d 800 (S.D.1982); *Katz v. Winokur*, 13 Mass.App.Ct. 1020, 433 N.E.2d 496 (1982); *LaPorte v. Ramac Associates, Inc.*, 121 R.I.

---

**10.** The statutory provisions governing trustee sales are contained in W.Va.Code § 38–1–1 et seq. (1985).

**11.** *See* James Geoffrey Durham, *In Defense of Strict Foreclosure: A Legal and Economic Analy-*

*sis of Mortgage Foreclosure*, 36 S.C.L.Rev. 461, 476 n. 102 (1985), and statutes cited therein.

**12.** *Id.* at 477 n. 111 and statutes cited therein.

**13.** *Id.* at 478 n. 112

82, 395 A.2d 719 (1978); *79–83 Thirteenth Ave., Limited v. DeMarco*, 44 N.J. 525, 210 A.2d 401 (1965).

The Bank and amicus argue this Court should not adopt the majority rule. They contend that the majority of jurisdictions that follow the rule do so pursuant to statutory authority.[14] We discern a distinction that is more fundamental than the general argument made by the Bank and amicus. While it is true that a majority of jurisdictions permit the sale price of foreclosed property to be challenged in a deficiency judgment proceeding pursuant to statutory authority, we must further tailor our inquiry. That is, we must focus on those jurisdictions which provide by statute for nonjudicial foreclosure sales involving a trustee deed. The latter factual circumstance is consistent with West Virginia law.

Research reveals that in addition to our state, eight other jurisdictions provide by statute for nonjudicial foreclosure sales only if the matter involves a trustee deed.[15] In three of these jurisdictions deficiency judgment proceedings are barred by statute.[16] Therefore, the issue of challenging a foreclosure sale price does not arise in those "anti-deficiency" jurisdictions, at least in the context with which we are herein concerned. Four of the remaining five jurisdictions permit, *by statute*, a challenge to the foreclosure sale price at a deficiency judgment proceeding.[17] The fifth jurisdiction, Virginia, appears to have permitted in only *one* instance, a grantor to challenge the foreclosure sale price at a deficiency judgment proceeding. *See Rohrer v. Strickland*, 116 Va. 755, 82 S.E. 711 (1914).[18] *Rohrer* is distinguishable from the instant proceeding. In the case at

**14.** For example, Tex. Prop.Code Ann. § 51.003 (1995) provides:

> If the court determines that the fair market value is greater than the sale price of the real property at the foreclosure sale, the persons against whom recovery of the deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value, less the amount of any claim, indebtedness, or obligation of any kind that is secured by lien or encumbrance on the real property that was not extinguished by the foreclosure, exceeds the sale price. If no party requests the determination of fair market value or if such a request is made and no competent evidence of fair market value is introduced, the sale price at the foreclosure sale shall be used to compute the deficiency.

*See also* N.D. Cent.Code § 32–19–06 (1996); N.J. Stat. Ann. § 2A:50–3 (1987); Minn.Stat. Ann. § 582.30 (1988); N.Y. Real Prop. Acts Proc. Law § 1371 (1979); Me.Rev.Stat. Ann. tit. 14, § 6324 (Supp.1996); 42 Pa. Cons.Stat. Ann. § 8103 (1982); N.C. Gen.Stat. § 45–21.36 (1996); Okla. Stat. Ann. tit. 46, § 43 (1996).

**15.** *See supra* note 11, Durham, *In Defense of Strict Foreclosure*, at 478 n. 112 and statutes cited therein.

**16.** Mont.Code Ann. § 71–1–317 (1995), *See First St. Bank of Forsyth v. Chunkapura*, 226 M. 54, 734 P.2d 1203 (1987); Or.Rev.Stat. § 86.770(2) (1995), *See Beckhuson v. Frank*, 97 Or.App. 347, 775 P.2d 923 (1989); Wash. Rev.Code Ann. § 61.24.100 (Supp.1997), *See Glenham v. Palzer*, 58 Wash.App. 294, 792 P.2d 551 (1990).

**17.** Ariz.Rev.Stat. Ann. § 33–817 (Supp.1996), *See Life Investors Ins. Co. Of America v. Horizon Resources Bethany, Ltd.*, 182 Ariz. 529, 898 P.2d

478 (1995); Idaho Code § 45–1515 (1977), *See Evans v. Sawtooth Partners*, 111 Idaho 381, 723 P.2d 925 (1986); Nev.Rev.Stat. § 40.457 (1995), *See Tahoe Highlander v. Westside Fed. Sav. & Loan Ass'n*, 95 Nev. 8, 588 P.2d 1022 (1979); Utah Code Ann. § 57–1–32 (1994), *See First S.W. Financial Servs. v. Sessions*, 875 P.2d 553 (Utah 1994).

The Nevada statute, *supra* § 40.457, sets out the matter as follows:

> 1. Before awarding a deficiency judgment under [the Code], the court shall hold a hearing and shall take evidence presented by either party concerning the fair market value of the property sold as of the date of foreclosure sale or trustee sale. Notice of such hearing shall be served upon all defendants who have appeared in the action and against whom a deficiency judgment is sought, or upon their attorneys of record, at least 15 days before the date set for hearing.
> 2. Upon application of any party made at least 10 days before the date set for the hearing the court shall, or upon its own motion the court may, appoint an appraiser to appraise the property sold as of the date of foreclosure sale or trustee's sale. Such appraiser shall file with the clerk his appraisal, which is admissible in evidence. The appraiser shall take an oath that he has truly, honestly and impartially appraised the property to the best of his knowledge and ability. Any appraiser so appointed may be called and examined as a witness by any party or by the court. . . .

**18.** In applying principles of equity to permit a challenge to the foreclosure sale price, the court in *Rohrer* expressed concern over the fact that "the trustee is the son-in-law of the creditor, the only bona fide bidder at the sale." *Id.* 116 Va. at

bar there was no allegation that the trustee was related to, or a member of the family of any official at the Bank. While it is true the son-in-law of the Bank's president appraised the Lillys' property, the Lillys were properly notified of the foreclosure sale. Moreover, the foreclosure sale was held in accordance with our existing laws.

 The Bank and amicus contend that the issue in this case is one that must be addressed by the legislature.[19] Notwithstanding our precedents which have applied principles of equity in trustee foreclosure situations, we believe the particular issue presented in this case should be resolved by the legislature for two distinct reasons. First, the lending institutions of this state have operated under the current trustee foreclosure scheme since the founding of this state. This scheme has always permitted a grantor to seek an independent action to either prevent a real property foreclosure from taking place, or to have a real property foreclosure sale set aside. Under the current real property foreclosure scheme there is a conclusive presumption that, at the point of a deficiency judgment proceeding, the property sold was sold for a fair market value. The Lillys now seek to have this Court redefine that presumption so that it becomes rebuttable. This we refuse to do. We find support in our position from an observation made in *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 544–46, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556, 569 (1994),

wherein the United States Supreme Court stated: "We deem, as the law has always deemed, that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." We have discerned no violation of our foreclosure laws by the Bank or trustee in the instant proceeding.

We believe that the very foundation of our trustee foreclosure laws would be unsettled were we to allow grantors to challenge the value of real property at a deficiency judgment proceeding. What has formerly been a relatively quick and inexpensive proceeding, would turn into protracted and expensive litigation. The implications could negatively effect lending institutions from providing loans to its customers. The issue posed to this Court by the Lillys clearly requires legislative consideration and legislative action as it is a marked deviation from existing law.

Second, the legislature has addressed the issue under discussion in the area of consumer goods. Under this state's Uniform Commercial Code, W.Va.Code § 46–9–507 (1963), a debtor is authorized to challenge, at a deficiency judgment proceeding, the sale price of goods sold by a secured creditor. *See Wachovia Bank and Trust Company v. McCoy,* 165 W.Va. 563, 270 S.E.2d 164 (1980). In syllabus point 4 of *Bank of Chapmanville v. Workman,* 185 W.Va. 161, 406 S.E.2d 58 (1991) we said that "[w]hen a secured credi-

---

759, 82 S.E. at 712. Additionally, the grantor in *Rohrer* was not provided notice of the foreclosure sale. We have not discovered any other Virginia decision consistent with *Rohrer.*

19. We hasten to point out that merely because the legislature has failed to provide by statute a mechanism for challenging the value of real property obtained from a foreclosure sale, does not necessarily mean that this Court may not resolve the matter. Our trustee sale statutes do not address the issue of setting aside a foreclosure sale. But, our cases have applied common law principles of equity to permit an action to set aside a foreclosure sale. *See* Syl. Pt. 2, *Corrothers v. Harris,* 23 W.Va. 177 (1883) ("A sale under a trust-deed will not be set aside unless for weighty reasons."); Syl. Pt. 12, *Atkinson v. Washington and Jefferson College,* 54 W.Va. 32, 46 S.E. 253 (1903) (In part: "Such sale will not be set aside, on the ground of inadequacy of

price ... [where] the evidence as to the value of the land does not clearly show that the price for which it sold is so inadequate as to shock the conscience[.]"); Syl. Pt. 2, *Emery's Motor Coach Lines v. Mellon National Bank & Trust Co. of Pittsburgh,* 136 W.Va. 735, 68 S.E.2d 370 (1951) ("Under a deed of trust appointing three trustees and providing that any two of such trustees may act, it is necessary that two of such trustees be personally present at any sale and supervise the same. A sale by one trustee in such instance will be set aside."). Our cases have also held that a grantor may seek injunctive relief to prevent a real property foreclosure sale from occurring. *See Villers v. Wilson,* 172 W.Va. at 115, 304 S.E.2d at 20 (where it was said that "there are instances when an injunction may lie; for example, when the proper amount due on the debt is in dispute"), *citing, Wood v. West Virginia Mortgage & Discount Corporation,* 99 W.Va. 117, 127 S.E. 917 (1925).

tor is found to have sold collateral in a commercially unreasonable manner, the fair market value of the collateral is rebuttably presumed to be equal to the amount of the remaining debt; to recover a deficiency, the secured creditor must prove that the debt exceeded the fair market value of the collateral." Our holding in syllabus point 4 of *Bank of Chapmanville* was premised upon the statutory right of a debtor to challenge the sale price of goods at a deficiency judgment proceeding.

The existence of W.Va.Code § 46–9–507 persuades this Court that any deviation from existing laws requires legislative involvement. The issue of permitting a grantor to challenge the sale price of foreclosed real property at a deficiency judgment proceeding is a legislative matter. Therefore, we hold that a grantor may not assert, as a defense in a deficiency judgment proceeding, that the fair market value of real property was not obtained at a foreclosure sale.

## IV.

## CONCLUSION

Based upon the foregoing, the order of the circuit court granting summary judgment to the Bank is affirmed.

Affirmed.