No. 14-0143 - *Nancy Sostaric and Stjepan Sostaric v. Sally Marshall*

**FILED**

**November 14, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Davis, Chief Justice, dissenting:

The sole issue presented for the Court's resolution in this case is whether, in a case to recover a deficiency judgment, the grantor of a deed of trust may assert as a defense that the grantee of the deed of trust paid less than fair market value for the secured property when she purchased it at the trustee sale. In 1997, this Court held, in a *unanimous* decision, that "[a] grantor may not assert, as a defense in a deficiency judgment proceeding, that the fair market value of real property was not obtained at a trustee foreclosure sale." Syl. pt. 4, *Fayette Cnty. Nat'l Bank v. Lilly*, 199 W. Va. 349, 484 S.E.2d 232 (1997). A key factor in the Court's decision in *Lilly* was the Court's express recognition that "[t]he issue of permitting a grantor to challenge the sale price of foreclosed real property at a deficiency judgment proceeding is a *legislative matter*." *Lilly*, 199 W. Va. at 358, 484 S.E.2d at 241 (emphasis added). Thus, the decision of the case *sub judice* should have been a straightforward application of this definitive statement of the law to the facts presently before the Court. However, this is not the approach adopted by the majority of this Court despite the fact that the law of deficiency judgments, *vis-a-vis* trustee sales, is the same now as it was when *Lilly* was decided.

1

Since the Court's issuance of the *Lilly* decision, nothing has changed. This Court has not identified a change in the governing law or statute sufficient to alter the holding of *Lilly*. The Legislature has declined this Court's explicit invitation in *Lilly* to revisit the statute governing trustee sales, *i.e.*, W. Va. Code § 38-1-3,[1] instead choosing to leave in place the statutory law that has been in effect since 1923. Finally, no arguments have been made in this case to support a good faith basis for changing the law in this regard. Nevertheless, based upon what can only be described as a mere whim, the majority of this Court has refused to abide by the doctrine of *stare decisis* and has infringed upon the exclusive authority of the Legislature without articulating a sound reason for doing so. Accordingly, I dissent from the majority's ill-advised and unsupported decision in this case.

---

[1]W. Va. Code § 38-1-3 (1923) (Repl. Vol. 2011) provides, in full:

The trustee in any trust deed given as security shall, whenever required by any creditor secured or any surety indemnified by the deed, or the assignee or personal representative of any such creditor or surety, after the debt due to such creditor or for which such surety may be liable shall have become payable and default shall have been made in the payment thereof, or any part thereof, by the grantor or any other person owing such debt, and if all other conditions precedent to sale by the trustee, as expressed in the trust deed, shall have happened, sell the property conveyed by the deed, or so much thereof as may be necessary, at public auction, having first given notice of such sale as prescribed in the following section [§ 38-1-4].

2

**A. *The Doctrine of Stare Decisis Requires Allegiance to this Court's Prior Opinions***

When this Court issues an opinion in a case, this Court is bound to follow that decision in subsequent cases. This allegiance to prior rulings is known as *stare decisis*. "[T]he doctrine of *stare decisis* requires this Court to follow its prior opinions." *State Farm Mut. Auto. Ins. Co. v. Rutherford*, 229 W. Va. 73, 83, 726 S.E.2d 41, 51 (2011) (per curiam) (Davis, J., concurring, in part, and dissenting, in part).

> *Stare decisis* . . . is a matter of judicial policy. . . . It is a policy which promotes certainty, stability and uniformity in the law. *It should be deviated from only when urgent reason requires deviation*. . . . In the rare case when it clearly is apparent that an error has been made or that the application of an outmoded rule, due to changing conditions, results in injustice, deviation from that policy is warranted.

*Woodrum v. Johnson*, 210 W. Va. 762, 766 n.8, 559 S.E.2d 908, 912 n.8 (2001) (emphasis added; internal quotations and citations omitted). Thus, *stare decisis* dictates that "[a]n appellate court should not overrule a previous decision recently rendered without *evidence of changing conditions or serious judicial error in interpretation* sufficient to compel deviation from the basic policy of the doctrine of *stare decisis*, which is to promote certainty, stability, and uniformity in the law." Syl. pt. 2, *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974) (emphasis added). *Accord Hilton v. South Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 202, 112 S. Ct. 560, 564, 116 L. Ed. 2d 560 (1991) ("[W]e will not depart from the doctrine of *stare decisis* without some compelling justification." (citation omitted)); *Rutherford*, 229 W. Va. at 83, 726 S.E.2d at 51 (Davis, J., concurring, in part, and

dissenting, in part) ("Absent *some compelling justification for deviation*, such as a change in the law or a distinguishable fact pattern, the doctrine of *stare decisis* requires this Court to follow its prior opinions." (emphasis added)).

When a prior decision of this Court involves a statute, this Court has found the need to comport with prior decisions to be even more compelling. "Once this Court determines a statute's clear meaning, we will adhere to that determination under the doctrine of *stare decisis*." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 588 n.17, 466 S.E.2d 424, 439 n.17 (1995). *Accord Master Mech. Insulation, Inc. v. Simmons*, 232 W. Va. 581, 591, 753 S.E.2d 79, 89 (2013) (Davis, J., dissenting) ("[W]e have explained that our allegiance to our prior decisions is most compelling in matters involving statutory interpretation."). In this regard, the United States Supreme Court has expressly recognized that "[c]onsiderations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated . . . ." *Patterson v. McLean Credit Union*, 491 U.S. 164, 172, 109 S. Ct. 2363, 2370, 105 L. Ed. 2d 132 (1989) (citations omitted), *superseded by statute on other grounds as stated in Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994).

"Mere disagreement as to how a case was decided is not a sufficient reason to

deviate from [*stare decisis*]." *Dailey*, 157 W. Va. at 1029, 207 S.E.2d at 173. Yet this is exactly how the majority reached its decision to depart from established precedent and statutory law to achieve its desired result in the case *sub judice*. In its opinion, the majority points to no clear "error [that] has been made" or "outmoded rule" that would require this Court to depart from its prior decision in *Lilly*. *Woodrum v. Johnson*, 210 W. Va. at 766 n.8, 559 S.E.2d at 912 n.8. *See, e.g.*, *Murphy v. Eastern American Energy Corp.*, 224 W. Va. 95, 101, 680 S.E.2d 110, 116 (2009) (observing that while "this Court is loathe to overturn a decision so recently rendered, it is preferable to do so where a prior decision was not a correct statement of law"). The sole authority upon which the majority bases its decision is a passage from the *Restatement (Third) of Property: Mortgages*, that was published the same year that *Lilly* was decided, and opinions from other states' courts that were issued *before* the Court issued its opinion in *Lilly*.[2] Neither of these resources demonstrates either a marked shift in the law from that which was in existence when a unanimous Court issued the *Lilly*

---

[2]The majority has cited two other sources of authority, neither of which provides the compelling justification required to abandon the doctrine of *stare decisis*: statutes promulgated by other states' legislatures and the case of *First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216 (Mo. 2012). First, to the extent this Court recognized in *Lilly* that "the particular issue presented in this case should be resolved by the legislature," 199 W. Va. at 357, 484 S.E.2d at 240, it goes without saying that the legislature contemplated to resolve the issue presented under West Virginia law in *Lilly* would be the *West Virginia* Legislature and not that of another state. Furthermore, as aptly noted, the opinion of *Fischer & Frichtel* reaches the same result as did this Court in *Lilly*; the majority cites this case solely for its dissent. Nevertheless, a change in the law of trustee sales that has a corresponding impact upon the law of deficiency judgments is, as this Court has noted, a matter for *legislative* contemplation, *not* judicial tinkering.

5

decision or other changes in the law in this State sufficient to warrant a departure from this Court's prior ruling.[3] Indeed, the majority's desire to depart from *Lilly* satisfies none of the criteria that *stare decisis* requires to support the abandonment of sound precedent.

### B. A Change of the Prevailing Law Requires Legislative, Not Judicial, Action

In *Lilly*, this Court expressly recognized that "any deviation from existing laws requires *legislative involvement*. The issue of permitting a grantor to challenge the sale price of foreclosed real property at a deficiency judgment proceeding is a *legislative matter*." 199 W. Va. at 358, 484 S.E.2d at 241 (emphasis added). Despite this clear statement by a unified Court, the majority inexplicably has now determined that the subject at hand is reposed in the breast of this branch of government. In its zeal to change the accepted way that trustee sales are conducted and deficiency judgments are awarded, the majority has impermissibly trammeled upon the Legislature's authority to determine the manner in which trustee sales are to be conducted.

As is evident from the facts of the case *sub judice*, if a deed of trust grantee

___

[3]I would be remiss if I did not also mention that no legal argument to support the change in the law achieved by the majority's opinion herein has been advanced in this case. Both of the parties in the instant matter are appearing *pro se*. While both of these individuals competently presented their arguments to the Court and contributed significantly to its understanding of the case *sub judice*, neither of them has identified a definite shift in the prevailing law such as would warrant the result obtained by the majority in its decision of this matter.

receives less than the full amount of the outstanding loan balance from proceeds of a trustee sale of the secured property, he/she likely will seek to recover the remaining balance due from the grantor as a deficiency judgment. Such a proceeding is a conceivable consequence that is inextricably linked to the amount paid to purchase property at a trustee sale, which sale is governed by the provisions of W. Va. Code § 38-1-3. While the failure to obtain the full amount of the outstanding loan balance through a trustee sale of the secured property is certainly not an unforeseen consequence, it is nevertheless one that has not yet been addressed by the Legislature. This Court previously has acknowledged that "[i]f the Legislature has promulgated statutes to govern a specific situation yet is silent as to other related but unanticipated corresponding situations, *it is for the Legislature to ultimately determine how its enactments should apply to the latter scenarios*." *Soulsby v. Soulsby*, 222 W. Va. 236, 247, 664 S.E.2d 121, 132 (2008) (emphasis added). Similarly,

> [w]hen specific statutory language produces a result argued to be unforeseen by the Legislature, *the remedy lies with the Legislature, whose action produced it, and not with the courts.* The question of dealing with the situation in a more satisfactory or desirable manner is a matter of policy which calls for legislative, not judicial, action.

*Worley v. Beckley Mech., Inc.*, 220 W. Va. 633, 643, 648 S.E.2d 620, 630 (2007) (Benjamin, J., dissenting) (emphasis added; internal quotations and citations omitted). *See also VanKirk v. Young*, 180 W. Va. 18, 20, 375 S.E.2d 196, 198 (1988) ("While it is unfortunate that the legislature did not foresee the situation now before us, we cannot rewrite the statute so as to provide relief . . ., nor can we interpret the statute in a manner inconsistent with the plain

meaning of the words."). Thus, to the extent that the prevailing statute, W. Va. Code § 38-1-3, addresses the manner in which trustee sales are to be conducted, but is silent as to what should be done when the trustee sale proceeds are not sufficient to fulfill the balance of the remaining indebtedness, it is for the Legislature to address this consequence — not this Court.

In *Lilly*, this Court recognized the deference due the Legislature in this area of the law. To that end, this Court's holding in *Lilly* merely reiterated the status quo process of allowing a deed of trust grantee to maintain an action for a deficiency judgment against the grantor irrespective of whether the property sold at the trustee sale obtained its fair market value. Recognizing that this is a matter for legislative resolution, this Court specifically invited the Legislature to revisit the governing statute to address and adopt the position advocated by the majority in the instant case. Given that "the legislature may alter or amend the common law,"[4] it may be presumed that the Legislature agreed with this Court's interpretation of the governing law in *Lilly* insofar as it declined this Court's invitation to amend the governing statutory law which has been in place for the past ninety-one years.

_____

[4]*Morningstar v. Black & Decker Mfg. Co.*, 162 W. Va. 857, 874, 253 S.E.2d 666, 675 (1979). *See also* Syl. pt. 2, *Smith v. West Virginia State Bd. of Educ.*, 170 W. Va. 593, 295 S.E.2d 680 (1982) ("One of the axioms of statutory construction is that a statute will be read in context with the common law *unless it clearly appears from the statute that the purpose of the statute was to change the common law*." (emphasis added)).

As the plain language of W. Va. Code § 38-1-3 demonstrates, the Legislature has not imposed a requirement that there be a certain minimum bid for property sold at a trustee sale or that such property may not be sold unless it fetches the property's fair market value or some other minimum sales price. *See also* W. Va. Code § 38-1-5 (1923) (Repl. Vol. 2011) (defining terms of trustee sale). Yet the majority effectively has now imposed these requirements upon the statutory procedure for the conduction of a trustee sale, because, if the property does not sell for its fair market value, the trust grantee's recovery in subsequent deficiency judgment proceedings will undoubtedly be reduced accordingly.[5] "It is not for this

_____

[5]In its consideration and resolution of this case, the majority has been quite concerned by what it perceives to have been a "low ball" bid by the trust grantee at the trustee sale. However, focusing on just this one piece of the puzzle does not accurately portray all the nuances of this financial transaction in its entirety.

Mr. and Mrs. Sostaric purchased the subject property, which has been described as a townhouse, in March 2006 for $155,900. Thereafter, in December 2006, they obtained a loan from Ms. Marshall for $200,000; it is not apparent from the record what the fair market value of the property was at the time of the loan, but it is clear that the amount of the loan was *more* than what the Sostarics had paid for the real property they offered as collateral therefor. After obtaining their $200,000 loan, the Sostarics defaulted by ceasing to make payments thereon in October 2010 despite their obligation to repay the money that they had borrowed. At the time of the trustee sale, the Sostarics were in arrears by nearly $232,000, which sum includes the unpaid loan principal and accrued interest.

On the day of the trustee sale, Ms. Marshall was the *only* person to offer a bid to buy the subject property. During oral argument, Ms. Marshall represented that she did not arrive at the amount of her $60,000 bid blindly, but rather decided upon this figure only after she consulted with a foreclosure attorney, sought the advice of several real estate professionals, and considered the recent sales prices of comparable properties on the *same street*. To date, Ms. Marshall avers that the real estate market has declined so drastically in recent years that she has been unable to sell this property *at any price* despite repeated

(continued...)

9

Court arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." *Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) (citations omitted). *Accord* Syl. pt. 1, *Consumer Advocate Div. of Public Serv. Comm'n of West Virginia v. Public Serv. Comm'n of West Virginia*, 182 W. Va. 152, 386 S.E.2d 650 (1989) ("A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten."). Neither may "the judiciary . . . sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 692, 408 S.E.2d 634, 642 (1991) (citation omitted). *Accord Subcarrier Commc'ns, Inc. v. Nield*, 218 W. Va. 292, 299 n.10, 624 S.E.2d 729, 736 n.10 (2005) ("It is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten." (internal quotations and citations omitted)).

---

[5](...continued)
showings and expressions of interest by potential purchasers.

While the tenor of the majority's opinion suggests that the Sostarics have been taken advantage of by an unscrupulous lender, they overlook the fact that Ms. Marshall has been the unfortunate benefactor of individuals who have obtained a loan that possibly could have been worth more than the security they provided for it and who then reneged on their promise to repay the money that they borrowed from her.

The result obtained by the majority in this case blatantly ignores the deference due the Legislature in the definition of the requirements and parameters of a trustee sale and imposes upon the process additional criteria that clearly are not consistent with the express indicia of legislative intent. On an issue governed by statute, this Court simply cannot substitute its own ideology for that of the Legislature. Because the Court refuses to follow this Court's prior precedent and flagrantly scorns the deference to be accorded to the Legislature in this area of the law, I respectfully dissent from the majority's ill-advised and unsupported opinion in this case.