488 S.E.2d 61

P.T.P., IV, an Infant by his Next Friends and Parents, P.T.P., III, and B.P., Appellants,

v.

**BOARD OF EDUCATION OF THE COUNTY OF JEFFERSON, and Gerry Sokol, Appellees.**

No. 23460.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 4, 1997.

Decided May 30, 1997.

Mike Kelly, Charleston, for Appellants.

Douglas S. Rockwell, Steptoe & Johnson, Charles Town, Nancy W. Brown, Clarksburg, for Appellees.

MAYNARD, Justice:

The appellants, P.T.P., IV (P.T.P.), an exceptional child, and his parents, P.T.P., III and B.P., seek reversal of a final order of the Circuit Court of Jefferson County, West Virginia, which dismissed their complaint with prejudice. On appeal, the appellants allege the trial court erred by dismissing: (1) the complaint for failure to exhaust administrative remedies; (2) the complaint because appellants are not aggrieved parties; (3) the Human Rights Act claim against the Jefferson County Board of Education; and (4) the Human Rights Act claim against Gerry Sokol, the Director of Pupil Services for Jefferson County. After reviewing the petition for appeal, the briefs of the parties, and the entire record, we believe the Impartial Hearing Officer (IHO) was correct in concluding the appellees, the Jefferson County Board of Education (Board) and Gerry Sokol, agreed to provide certain evaluations and provide certain services to P.T.P., IV. Therefore, we affirm the circuit court's dismissal of the complaint and remand with directions to enforce the decision of the IHO.

P.T.P. was a fifteen-year old exceptional student at the time the complaint was filed in this action in 1994. P.T.P. is moderately mentally impaired and has been diagnosed with Fragile X Syndrome.[1] The Jefferson County Board of Education has provided special education services to P.T.P. during all of his school years. During the 1995 school year, the Board paid for P.T.P.'s residential placement in Grafton, West Virginia. Gerry Sokol has been the overseer of P.T.P.'s special education program.

In March 1994, B.P. was examining P.T.P.'s school records when she became aware of a 1984 evaluation. The evaluation diagnosed P.T.P. as having atypical pervasive developmental disorder, oppositional disorder, and attention deficit hyperactive disorder. A few days later in a meeting with school officials, B.P. requested that her son be independently evaluated, asserting her rights under the Individuals with Disabilities Education Act (IDEA).[2] B.P. requested the evaluation in order to determine the appropriate educational treatment for P.T.P. in light of the 1984 reports.

Mr. Sokol approved the evaluation, contingent upon financial arrangements, qualifications of the evaluator(s), and the criteria and location for the evaluation.[3] The parents retained an advocate, Patricia Lemer, who was informed by Mr. Sokol that the evaluation needed to be conducted by a multidisciplinary team.[4] Ms. Lemer presented to

---

1. Fragile X Syndrome is a genetic disorder.

2. Prior to 1990, the IDEA, 20 U.S.C. §§ 1400 to 1462 (1970), was known as the Education of the Handicapped Act or the EHA.

3. The record is not absolutely clear on this point. The IHO makes specific reference in her report to an April 6, 1994 letter written by Mr. Sokol to the appellants in which he agreed to an independent evaluation of P.T.P. at public expense. We cannot find the letter in the record that was submitted on appeal.

4. The Board states that the multi-disciplinary team is composed of representatives from the child's school including the teacher and a supervisor of special education. The team is charged with creating the student's individualized education program (IEP), which is a written statement that includes the child's current performance, the annual goals and short-term instructional objectives, the specific educational services and the evaluation procedures to determine whether the objectives are being achieved. See 20 U.S.C. § 1414(a)(5) (1994) and 34 C.F.R. § 300.344(a) (1996).

Mr. Sokol, for his approval, three members of the team: Lois Hickman, an occupational therapist from Colorado; Betty Schopmeyer, a speech language pathologist from Maryland; and Dr. Dominick Maino, an optometrist from Chicago.[5] Ms. Lemer nominated herself to conduct classroom observations and to provide advocacy services. The cost of the evaluation submitted by Ms. Lemer was $4,480.

Mr. Sokol's response to Ms. Lemer's request was that the cost for these evaluators far exceeded the reasonable cost for an evaluation. Mr. Sokol objected to paying for Ms. Lemer's role as coordinator and requested further discussion regarding the cost of the evaluation. When asked by Ms. Lemer to articulate a reasonable cost for an evaluation, Mr. Sokol responded that most independent evaluations previously paid for by the Board had cost in the range of $500 to $800. Additionally, Mr. Sokol provided the parents with a list of independent evaluators whose services the Board had previously utilized.

Unable to reach an agreement with the Board, the parents initiated a due process hearing before an IHO.[6] The parents requested that the Board be required to pay for independent evaluations of P.T.P. by a qualified speech therapist, an occupational therapist, and a genetic disease vision specialist, and for case management services.

A hearing was conducted by an IHO on September 12, 1994. The IHO issued her decision on October 24, 1994, concluding that under the facts of this case, the state and federal regulations do not provide for an independent educational evaluation at public expense. The IHO determined that P.T.P.'s parents did not present any evidence to show they disagreed with any particular evaluation(s) the Board had conducted of P.T.P., as is required by 34 C.F.R. § 300.503 (1996);[7] rather, the parents were asking that additional areas be assessed.

The IHO also concluded that Mr. Sokol agreed to provide payment for an independent evaluation, not based on statutory or regulatory requirements, but to ease the strained relationship between the Board and the parents. The IHO ruled this removed the issue from "regulation application" to a contract analysis.[8] The decision required the

5. Dr. Maino specializes in vision problems related to genetic diseases.

6. 20 U.S.C. § 1415(b)(2) (1994) provides for due process hearings, by stating:

(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.

7. This regulation states in pertinent part:

34 C.F.R. § 300.503 Independent educational evaluation.
(a) *General.* (1) The parents of a child with a disability have the right under this part to obtain an independent educational evaluation of the child, subject to paragraphs (b) through (e) of this section.
(b) *Parent right to evaluation at public expense.* A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency. However, the public agency may initiate a hearing under

§ 300.506 to show that its evaluation is appropriate. If the final decision is that the evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.
(e) *Agency criteria.* Whenever an independent evaluation is at public expense, the criteria under which the evaluation is obtained, including the location of the evaluation and the qualifications of the examiner, must be the same as the criteria which the public agency uses when it initiates an evaluation.

8. The decision states:

This hearing officer must therefore find that the regulatory provisions requiring LEA [Local Educational Agency] payment for an independent educational evaluation of the student are not applicable in this due process, as a hearing officer did not order such an evaluation and there was insufficient evidence introduced to show that a parent disagreed with any evaluation obtained by the public agency prior to requesting the independent evaluation. The regulations do not require any LEA expenditure of public funds for independent educational evaluations of the student based on the evidence introduced in this due process.

However, the uncontroverted evidence in this due process was that the parent made the request and the LEA by letter agreed to pro-

Board to pay $650 for an occupational therapy evaluation report and $650 for a speech evaluation report, plus reasonable transportation costs for these evaluators. The Board must also pay Ms. Lemer $100 per hour for 0.50 hours spent on a classroom observation of P.T.P. and for a reasonable amount of time spent drafting the independent educational evaluation report, plus transportation costs. The requests for a vision evaluation and for advocacy services were denied. The parents admit the IHO ruled "substantially in their favor." The IHO found no intentional misconduct on the part of the Board or Mr. Sokol. Instead, the IHO praised the Board's intention to pay for the evaluation in order to heal the rift caused by prior proceedings and earlier conflicts.

The appellants report that as of February 20, 1995, the classroom observation alone had been completed. The Board had not conducted or offered to pay for the independent evaluations ordered by the IHO. As a result, on February 21, 1995, the appellants instituted this action by filing a complaint in circuit court pursuant to the rights afforded them by 20 U.S.C. § 1415(e)(2) (1994) [9] and the West Virginia Human Rights Act, W.Va. Code § 5–11–1, *et seq*. The court dismissed the complaint in its entirety, with prejudice, on October 12, 1995. It is from this order the appellants bring this appeal.

On appeal, the appellants contend the lower court erred by dismissing the complaint, with prejudice, pursuant to West Virginia Rule of Civil Procedure 12(b). The appellees, the Board and Mr. Sokol, argue the court correctly dismissed this action because the appellants failed to exhaust administrative remedies; the appellants are not aggrieved parties under the IDEA; the appellants did not state a cause of action under the West Virginia Human Rights Act; and Mr. Sokol is entitled to qualified immunity. It appears to us, as it did to the IHO, that the Board and Mr. Sokol agreed to pay for an occupational therapy evaluation report, a speech evaluation report, and a classroom observation in order to resolve the dispute and to ease the strained relationship between the parents and the Board. Therefore, we affirm the order of the circuit court, which dismissed the appellant's complaint, and remand with directions to reinstate the decision of the IHO.

Simply put, the IHO concluded there was a contract between the appellants and the Board, and the Board breached the contract by failing to pay for the evaluations as they had promised. The IHO found the Board was obligated to pay for these services because Mr. Sokol had agreed that these evaluations be paid for at public expense. Further, the IHO reasoned that this obligation was imposed solely by the contract and not by any requirements or provision of the

---

vide payment for this independent evaluation. The LEA's reason for agreeing to the request was not based on the statutory or regulatory provisions concerning independent educational evaluations at public expense but was an attempt to ease the strained relationship between the parents and the LEA occasioned by a long history of disagreement between them and particularly the prior due process hearing just completed at the time of the LEA letter of agreement. This reason for the LEA election to not follow the regulations concerning independent educational evaluations at public expense, however laudable in intent, necessarily removes the issue from regulation application to a contract analysis. In other words, what did the LEA *agree* to pay for not what do the regulations *require* the LEA to pay for? This analysis demands two inquiries: 1) what type or types of independent educational evaluations were agreed to, and 2) what amount of public funds should be expended by the LEA to comply with the agreement.

9. 20 U.S.C. § 1415(e)(2) states:

(2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

IDEA.[10]

In reviewing the record in this case, we find that procedurally, it is a mess. If the Board disagreed with the IHO's decisions and believed it was a "party aggrieved" who should not have been required to pay for the evaluations, the Board should have followed the appeal procedure set forth in the IDEA at 20 U.S.C. § 1415(e)(2).[11]

As far as we can tell from the record, the Board did nothing in reference to the evaluations after the IHO issued her decision. The Board did not have the occupational therapy evaluation or the speech therapy evaluation completed, nor did the Board appeal the IHO's decision. A due process hearing decision that is not appealed is final. 20 U.S.C. § 1415(e)(1) (1994).

It appears to us that the appellants filed a complaint in circuit court, not to enforce the ruling of the IHO, but because they wanted a decision based on the IDEA rather than on a contract basis. The appellees filed a motion to dismiss the action. The court dismissed the complaint, stating only that the appellees' motion was granted. The court included no findings of fact, conclusions of law, or basis for making this decision.

We have previously directed that "on summary judgment, a circuit court must make factual findings sufficient to permit meaningful appellant review." *Gentry v. Mangum,* 195 W.Va. 512, 521, 466 S.E.2d 171, 180 (1995). We further explained in *Fayette County National Bank v. Lilly,* 199 W.Va. 349, 353, 484 S.E.2d 232, 236 (1997) that "[t]his Court's function, as a reviewing court is to determine whether the stated reasons for the granting of summary judgment by the lower court are supported by the record."

Appellate courts, on review, rely heavily on the trial judge's order; the order is extreme-ly important. The order often assists appellate courts in understanding what the trial court did and why, and good orders often rebut allegations made by appealing parties in briefs and arguments. If the lower tribunal is interested in having its decision affirmed, then the lower court should assist the appellate courts by providing comprehensive, well-reasoned orders. Submission of a comprehensive order assists an appellate court in finding a way to affirm the lower court's order.[12]

Dismissal orders, like summary judgment orders, should contain findings of fact which are sufficient to provide clear notice to all parties and the reviewing court as to the rationale applied by the lower court. We cannot perform our function when the lower court simply states its ruling in an order. So that we may provide meaningful appellate review, the lower court needs to provide us with more than a simple conclusion. Therefore, we hold that a circuit court's order granting dismissal should set out factual findings sufficient to permit meaningful appellate review. Findings of fact were defined in *Lilly,* at 354, 484 S.E.2d at 237, as "facts which the circuit court finds relevant, determinative of the issues and undisputed."

As we understand this case, the appellants filed two separate proceedings: (1) the due process complaint; and (2) the complaint filed in the circuit court. The circuit court's order only dismissed the complaint that was filed in circuit court on February 21, 1995. There is no indication in the record that the circuit court's order altered or dismissed the IHO's report. It appears the IHO's decision is still in full force and effect and is binding upon the parties. Consequently, the Board must fulfill the contract they made with the appellants by completing

---

10. We need not address at this time the issue of whether the IDEA requires the independent evaluations, as such determination is not necessary for the resolution of this appeal.

11. *See* n. 9, *supra,* for the text of this statute.

12. *Mea culpa.* The author of this opinion cringes at the prospect that someone will now review some of the orders he issued as a trial judge because that person would quickly discover some very short, inadequate orders. However, among the many useful lessons learned in the big city is

the obligations the IHO found the Board had promised.[13]

We believe the Board should have appealed the IHO's decision if the Board felt aggrieved by that ruling. The Board chose not to appeal, so the IHO's decision is final. We also believe the circuit court did not err in dismissing the February 21, 1995 complaint. Therefore, we affirm the order of the circuit court. However, we clearly state that even though we are affirming the circuit court's decision, this opinion in no way alters the IHO's decision. The Board must pay for the promised evaluations, but only in the amounts directed by the IHO.[14]

As far as the appellants' claim for attorney fees is concerned, this Court has no way to factually develop the fee issue. Therefore, we remand to the trial court to make a determination of attorney fees in this case.

For the reasons stated above, we affirm the order of the circuit court which dismissed the complaint and remand with directions to reinstate the decision of the IHO and to make a determination regarding attorney fees.

Affirmed and remanded with directions.

the critical importance of the content of orders in evaluating cases on appeal.

**13.** Because we are deciding this case on a contract basis, we need not reach the IDEA or the HRA issues presented by the appellants.

**14.** While the majority does not agree, the author of this opinion strongly believes that it is appropriate to comment here on the distant and scattered locations of the various professionals chosen by Ms. Lemer to assist in the evaluation of P.T.P. I insist that reason and common sense should dictate the selection of professionals, at least as far as location is concerned. Surely there is an occupational therapist closer than Colorado who can complete an occupational therapy evaluation of exceptional children. And surely a speech pathologist with experience in evaluating these students can be found in West Virginia, without going to our neighboring state of Maryland. I am certain there must be a competent optometrist in West Virginia, or at least closer than Chicago, who could provide a visual evaluation, if one is required in this case. The so-called "team" recruited here to provide services at public expense appear to be part of a real "sweetheart deal"; I can think of no other reason the professionals must come from such varied and far away places in the country to provide services to one special education student in Jefferson County, West Virginia. I believe there is the potential in these cases to abuse the system and I do not think the advocate should have a blank check to spend the public purse.