No. 24-ICA-68 - *Heidi Price, Administratrix of the Estate of Ellis Wayne Price v. Raleigh General Hospital, LLC, and Philip Bailey*

WHITE, J., concurring, in part, and dissenting, in part:

I concur with my colleagues that principles of due process were not violated when the circuit court denied pre-hearing discovery. I also concur with the majority that the Act clearly requires circuit courts to stay discovery until the court holds a hearing on "impacted care," that is, whether the "care offered, delayed, postponed, or otherwise adversely affected at a health care facility or from a health care provider" was related to COVID-19 or the COVID-19 emergency.

I write separately, however, to emphasize that the Act is silent as to whether the court, once a hearing is in process or has been held, may exercise its reasonable discretion to allow limited discovery, if it decides that some discovery is appropriate on the narrow issue of whether a patient was injured by "impacted care." The plain language of the Act does not limit the circuit court's fact-finding authority on the issue of "impacted care" in the hearing if the circuit court determines additional fact finding is necessary.

As a court, and as the finder of fact, the circuit court is endowed with all the inherent powers needed to perform its task, including the authority to permit limited discovery if it determines discovery is necessary at or after the hearing to determine the

1

factual issue as to whether "impacted care" occurred. This interpretation of the Act is consistent with the legislative scheme and purpose and would not impose an undue burden on litigants. Such a reading is also consistent with the discussion of the West Virginia Legislature cited by the majority. Consequently, I disagree with the majority, and I perceive that the Act permits a circuit court to allow some limited discovery when it convenes the required hearing on the existence of impacted care.

The Supreme Court of Appeals of West Virginia ("SCAWV") has repeatedly held that ultimate questions of statutory or qualified immunity are ripe for summary disposition "unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination[.]" *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996); *accord Yoak v. Marshall Univ. Bd. of Governors*, 223 W. Va. 55, 59, 672 S.E.2d 191, 195 (2008) (per curiam); *Eldercare, LLC v. Lambert*, 250 W. Va. 291, ___, 902 S.E.2d 840, 849 (2024). Plaintiffs are entitled to limited discovery concerning the facts which determine whether qualified or statutory immunity applies, and courts frequently allow such limited discovery. *See generally* 63C Am. Jur. 2d *Public Officers and Employees* § 390 (2024) ("it is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage."). In this case, the historical/foundational facts would be whether the decedent's health care was impacted by the COVID-19 emergency. As with other medical malpractice cases, discovery might be

2

needed to determine whether a health care provider was guilty of "intentional conduct with actual malice." *See* W. Va. Code § 55-19-7 (2021).[1]

I also disagree with the majority as to whether this matter should be remanded to the lower court for a more complete order. The facts as found by the circuit court are well-nigh nonexistent and are clearly insufficient to support the court's conclusory statement that "care provided to Ellis W. Price, or the alleged failure to provide care, was adversely impacted by the COVID 19 emergency . . . ." Whether the judgment of the circuit court is analyzed as a ruling on a motion to dismiss, or a motion for summary judgment,[2]

---

[1] The Act provides a somewhat different exception to immunity for manufacturers, sellers, or donors of defective products than for health care providers. *See* W. Va. Code § 55-19-5(c) (providing that there is no immunity from liability where a defendant "(1) [h]ad actual knowledge of a defect in the product when put to the use for which the product was manufactured, sold, distributed, or donated; and acted with conscious, reckless, and outrageous indifference to a substantial and unnecessary risk that the product would cause serious injury to others; or (2) [a]cted with actual malice.").

[2] In this case, the parties agree that the circuit court ruled on a motion to dismiss that was converted into a motion for summary judgment when the court considered affidavits and medical records that were not part of the complaint. The majority characterizes the circuit court's decision as a ruling in a special summary proceeding but does not question whether the requirement for a sufficiently detailed explanation of the circuit court's reasoning to permit meaningful appellate review would be applicable. Even if we treat the summary proceeding under the COVID-19 Protection Act as a "mini trial," the circuit court would be required to "find the facts specially and state separately its conclusions of law thereon[.]" W. Va. R. Civ. P. 52(a). As the court explained in *U.S. for Use of Belcon, Inc. v. Sherman Const. Co.*, 800 F.2d 1321, 1324 (4th Cir. 1986):

> To satisfy the demands of Rule 52(a), a trial court must do more than announce statements of ultimate fact. The court must support its rulings by spelling out the subordinate facts on which it relies. …Unless the trial court fully complies

3

the court was required to articulate findings of fact and conclusions of law in sufficient detail to allow meaningful appellate review. *P.T.P., IV v. Bd. of Educ. of Jefferson Cnty.*, 200 W. Va. 61, 65, 488 S.E.2d 61, 65 (1997). This Court has never hesitated to remand cases for more complete orders, and has even done so sua sponte. Courts may sua sponte remand matters for more detailed findings of fact and conclusions of law. *In re Care and Treatment of Chubb*, 317 P.3d 148 (Table), No. 105,570, 2014 WL 278697, *6 (Kan. Ct. App. Jan. 24, 2014) ("Although this remand order is *sua sponte* given that Chubb has not requested it, as a general rule appellate courts may order a remand when the lack of specific findings precludes meaningful appellate review."); *see In Re Picht*, 403 B.R. 707, 714 (10th Cir. 2009) (remanding case sua sponte for findings of fact and conclusions of law under Rule 52(a)); *Thomas v. Attorney General, Florida*, 795 F.3d 1286, 1287 (11th Cir. 2015) (remanding case for additional and more detailed findings of fact and application of those facts to the changing law of equitable tolling).

In this case, the circuit court did not identify or analyze the facts it relied on, other than to refer to the affidavits that were filed in the case, and then only noted that the health care providers had submitted affidavits from two hospital employees but the Estate had "failed to introduce any evidence in opposition to the affidavits." The circuit court did not describe the substance or content of those affidavits, or identify any facts contained in

---

with Rule 52(a), appellate review becomes an exercise in conjecture.

them which supported its conclusion that Mr. Price's medical care, "or the alleged failure to provide care, was adversely impacted by the COVID-19 emergency[.]" Nor did the court mention the medical records submitted by the estate and indicate whether it reviewed those records and considered whether they were relevant or persuasive.

As the court instructed in *P.T.P., IV v. Bd. of Edu. Of Jefferson Cnty.*, 200 W. Va. 61, 65, 488 S.E.2d 61, 65 (1997):

> Dismissal orders, like summary judgment orders, should contain findings of fact which are sufficient to provide clear notice to all parties and the reviewing court as to the rationale applied by the lower court. We cannot perform our function when the lower court simply states its ruling in an order. So that we may provide meaningful appellate review, the lower court needs to provide us with more than a simple conclusion. Therefore, we hold that a circuit court's order granting dismissal should set out factual findings sufficient to permit meaningful appellate review. Findings of fact were defined in *Lilly,* at 354, 484 S.E.2d at 237, as "facts which the circuit court finds relevant, determinative of the issues and undisputed."

Merely referring to the affidavits submitted by the health care providers was not sufficient to permit meaningful appellate review in this case. *See Jonathan F. v. Rebekah L.*, 247 W. Va. 562, 883 S.E.2d 290 (Ct. App. 2023) (remanding case for specific findings of fact and conclusions of law where the family court explained its decision by referring to a guardian ad litem report which "contained recommendations that the court believes to be in the best interest of the child."); *Fayette Cnty. Nat. Bank v. Lilly*, 199 W. Va. 349, 354, 484 S.E.2d 232, 237 (1997) (court's statement that it had considered plaintiff's motion for summary judgment as well as counsel's memorandum and arguments was insufficient); *Honeycutt v.*

*Paugh*, No. 11-1491, 2012 WL 5834856, *1 (W. Va. Nov. 16, 2012) (memorandum decision) (statement that the court relied on pleadings, depositions, answers to interrogatories, and affidavits, if any, was insufficient); *Meagan S. v. Terry S.*, 242 W. Va. 452, 836 S.E.2d 419 (2019) (remanding case for further proceedings and specific findings of fact and conclusions of law where the circuit court relied on "*the testimony of the parties and the report of the [GAL]*" and it was unclear what testimony was considered); *Milano v. Mountaineer Dough*, *LLC*, No. 23-ICA-86, 2023 WL 7202965 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision) (findings of fact regarding security footage submitted into evidence were "entirely inadequate" where the Board of Review noted that it had received two videos of security camera footage but made no findings as to the contents of the videos; court "emphasize[d] that the Board must summarize the evidence submitted before it in order to make findings of fact and conclusions of law sufficient to afford meaningful appellate review.").

The estate alleges that Mr. Price arrived at the ER at 1:13 p.m. complaining of chest pains and did not receive **any** medications until somewhere around 8:37 p.m., despite orders at 3:08 p.m. for aspirin and Lovenox, and at 7:37 p.m. (heparin), 7:37 p.m. (Brilinta), and 7:50 p.m. (aspirin). The complaint also alleges that no beta-blockers were administered. The circuit court's order does not explain this treatment delay of more than seven hours and relate it to any COVID-19 related disruptions at the hospital. Nor does the

order under review indicate why beta blockers were not administered.[3] Litigants who have their cases dismissed due to a finding of the court of impacted care are entitled to at least see that the circuit court specifically found the failure of the hospital (here it is a more than seven hour delay) to provide the care was related to COVID-19 and point to the evidence that it based its factual finding on. Despite the assertions made by Mr. Price's estate, the circuit court made a summary conclusion that the "alleged failure to provide care, was adversely impacted by the COVID 19 emergency." In my opinion that is not sufficient to comply with the statutory mandate of the trial court to determine whether factually "impacted care" occurred.

In upholding the judgment of the lower court, the majority has reviewed the record to find facts which would support the circuit court's ruling.[4] In so doing, it has done what should have been done by the circuit court. In essence, it has cast itself in the role of

---

[3] The complaint does not indicate whether beta blockers were never ordered or were ordered but not administered before Mr. Price had suffered serious, irreversible damage to his heart. Assuming that beta blockers should have been ordered, but were not, that would arguably constitute a potential liability claim unrelated to the COVID-19 emergency. As counsel for the hospital acknowledged during the hearing below, the COVID-19 Protection Act was not intended to provide a "get out of jail free" card. If a doctor made a mistake in medical judgment, such as misreading an EKG, he could still be liable.

[4] The majority notes in its opinion that "Penni Hall's affidavit alleged that 'Mr. Price's alleged treatment delay was directly related to a census increase and staffing shortage caused by a surge in COVID-19 infection within Raleigh County….'" This conclusory statement was never identified or discussed in the circuit court's order.

fact finder, which is not the job of an appellate court.[5] *See Milano v. Mountaineer Dough, LLC*, No. 24-13, 2025 WL 89043 (W. Va. Jan. 14, 2025) (memorandum decision) (reversing the ICA where it failed to remand a matter for findings as to what a video showed, and the ICA reviewed the video itself to conclude that the claimant had not been injured during a robbery at his workplace). According to the *Milano* opinion, "the ICA erred in substituting its judgment for that of the Board of Review instead of remanding this case to the Board for it to make findings regarding what the video footage showed about how the claimant was injured." *Id*. at *2.

In addition to more complete findings of fact, this matter should have been remanded for more complete conclusions of law. Although the circuit court ruled on the Estate's due process argument, it did not address the Estate's separation of powers argument. Due process and separation of powers are separate and distinct arguments based on different provisions of the state constitution. The estate's separation of powers argument was a non-frivolous issue,[6] and it would have been beneficial to have the circuit court rule

---

[5] I note in this regard that the circuit court is required not only to identify relevant evidence, but to consider the reasonable inferences which might be drawn therefrom. Referring to affidavits or other materials without some explanation of their significance makes it difficult for an appellate court to review the ruling of a circuit court. If the referenced materials contain multiple factual representations, how are we to know which ones were adopted by the circuit court, or why they were deemed relevant? What if some of the statements are inconsistent? How are we to know how, or if, they were reconciled by the lower court?

[6] *See generally* W. Va. Cn. Art. V, § 1 ("The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others[.]" Article VIII, § 3 ("The [supreme]court shall have power

on it so that the issue would be more developed when it was presented for our review.[7]

Appellate courts are understandably reticent to address issues which have not been ruled on by the lower court in the first instance. *See* Syl. Pt. 2, *Mowery v Hitt*, 155 W. Va. 103, 181 S.E.2d 334 (1971) ("Upon an appeal to this Court from a judgment of a circuit court entered in a civil action, if it appears that certain questions were properly presented for decision but not considered or decided by the trial court, this Court may reverse the judgment of the trial court and remand the case to that court for decision of the questions thus properly presented for decision but not decided."); *In Re Michael Ray T.,* 206 W. Va. 434, 443-44, 525 S.E.2d 315, 324-25 (1999) (case remanded where circuit court declined to consider custody motion).

It is entirely possible that given the current record, the trial court could have utilized its discretion at the hearing to determine that limited discovery was not required by the court and made findings of fact in its order which are based on the evidence before

to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the state relating to writs, warrants, process, practice and procedure, which shall have the force and effect of law."); *Games-Neely v. Real Prop.*, 211 W. Va. 236, 244, 565 S.E.2d 358, 366 (2002) ("there is no question that rules promulgated under authority of the state constitution … prevail whenever there is a conflict, real or perceived, between such rules and legislative provisions involving court procedures.").

[7] I do not concur in the majority's analysis of the separation of powers issue, which was unnecessary given the majority's conclusion that briefing on this issue was too cursory to properly present the issue for our review, the fact that the circuit court never ruled on the separation of powers argument, and the fact that a remand to the circuit court might have resulted in a ruling on the Rule 56(f) issue which would have eliminated the need for a ruling on any constitutional issue. In general, this court should refrain from ruling on constitutional issues when it is unnecessary to do so.

it necessary to support its conclusory statement regarding impacted care. The circuit court's failure to make findings of fact and conclusions of law, however, make me question whether it took the steps necessary to come to the conclusion needed for us to appropriately provide appellate review on the issue. As stated above, I am uncomfortable reaching into the record to make factual determinations which were not made by the circuit court in order to affirm its order.

For all these reasons, I respectfully concur, in part, and dissent, in part, from the majority opinion.